Cheryl M. HOOVEN–LEWIS, Plaintiff–Appellant,

v.

Louis CALDERA, Secretary of the Army, Defendant–Appellee.

No. 00–1439.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 26, 2001.

Decided May 1, 2001.

260

**ARGUED:** John Wesley Davis, Washington, DC, for Appellant. Ariana Wright Arnold, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Thomas J. Gagliardo, Gagliardo & Zipin, Silver Spring, Maryland, for Appellant. Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellee.

Before WILLIAMS and TRAXLER, Circuit Judges, and LEE, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge LEE wrote the opinion, in which Judge WILLIAMS and Judge TRAXLER joined.

## OPINION

LEE, District Judge:

Plaintiff–Appellant Cheryl M. Hooven–Lewis appeals a final order of the United States District Court for the District of

Maryland granting Defendant–Appellee Louis Caldera's motion for summary judgment and entering judgment for Appellee on Appellant's claims. Appellant Hooven–Lewis alleged that the Army discriminated against her in violation of the Rehabilitation Act because of her disability (a hand tremor); that the Army subjected her to placement in improper job positions and terminated her in retaliation for her Equal Employment Opportunity activity, in violation of the Rehabilitation Act; and that the Army terminated her in violation of the Whistleblower Protection Act for informing on superiors who failed to report errors in laboratory data.

The issues before the Court are whether Hooven–Lewis has a disability under the Rehabilitation Act or was regarded by her employer as having such a disability, whether Hooven–Lewis made out a prima facie case of retaliation under the Rehabilitation Act, and whether the Merit Systems Protection Board was arbitrary and capricious or abused its discretion in finding that Hooven–Lewis' employer did not terminate her for informing upon her superior. The Court holds that Hooven–Lewis does not have a disability under the Rehabilitation Act because she does not have a condition that substantially limits her in any major life activity. In addition, Hooven–Lewis' employer does not perceive her as having such a disability. The Court further holds that Hooven–Lewis has not made out a prima facie case of retaliation under the Rehabilitation Act because she has failed to show a causal connection between protected activities and alleged acts of reprisal. The Court also holds that Hooven Lewis' whistleblower retaliation claim fails because the Merit Systems Protection Board did not act arbitrarily or abuse its discretion in dismissing Hooven–

Lewis' whistleblowing claim; the record before the Court demonstrates that the Board considered the evidence and made a reasoned decision.

## FACTS

Plaintiff–Appellant Cheryl Hooven–Lewis entered active duty in the United States Army in January, 1985. While enlisted, Hooven–Lewis received training as a medical laboratory specialist[1] and was ultimately assigned to the Walter Reed Army Hospital Institute of Research ("Walter Reed"). After her discharge from duty in January, 1988, Hooven–Lewis obtained civilian employment at Walter Reed as a biological laboratory technician. Between January, 1988 and May, 1989, Hooven–Lewis worked under the supervision of Dr. Susan Loring while she was in training. From 1989 to 1993, Hooven–Lewis worked in the division of retrovirology under Dr. Victoria Polonis. Her job involved working with laboratory specimens, various chemicals, and electrical and mechanical laboratory equipment. During her time with Dr. Polonis, Hooven–Lewis suffered from an undiagnosed hand tremor. Dr. Polonis accommodated Hooven–Lewis' tremor by not requiring her to handle any hazardous or infectious substances. Other laboratory technicians would lyse the live infectious cells, rendering them inactive.

When Dr. Polonis resigned her commission, Hooven–Lewis was recruited to work in several laboratories because of her excellent work record and commendations. Hooven–Lewis accepted a position with Dr. Maryanne Vahey in October, 1993. When interviewing with Dr. Vahey, Hooven–Lewis told Dr. Vahey that her previous supervisors had not required Hooven–Lewis to work with lethal pathogens or live materials that were highly infectious

---

1. Hooven–Lewis did not receive training in college in this field. Hooven–Lewis' degrees are in business management and sociology/criminal justice.

and dangerous. Dr. Vahey assured Hooven–Lewis that it would not be a problem. However, Hooven–Lewis did not tell Dr. Vahey about her hand tremor. Upon beginning work with Dr. Vahey, Hooven–Lewis continued to do much of the same work with chemicals and lysed infectious agents that she had done with Dr. Polonis. In addition to the laboratory "bench work," Hooven–Lewis also organized the lab and did administrative work. Most of the administrative work was done at home.

In November, 1993, Hooven–Lewis discovered some errors in the data in Dr. Vahey's lab. Hooven–Lewis discussed the errors with Dr. Vahey. Hooven–Lewis expressed the concern that the errors could result in inaccurate experiments because other labs shared Walter Reed's results for use in their experiments. Dr. Vahey assured Hooven–Lewis that she would alert the partner labs to the errors. Hooven–Lewis consulted with her previous supervisor, Dr. Loring, and obtained her opinion that the errors could result in AIDS patients receiving improper dosages of their medications. A week later, in December of 1993, doctors diagnosed Hooven–Lewis as having a physiological hand tremor that caused difficulty with fine motor dexterity. However, Hooven–Lewis did not ask to be removed from her job as a technician because she was not working with active (non-lysed) HIV. In that same month, Dr. Vahey ordered her lab staff to throw away all protocols and records that had been used in several experiments, including those experiments containing erroneous data.[2]

Walter Reed promoted Hooven–Lewis to a supervisory position as "a laboratory protocol manager" in February, 1994. However, the work Hooven–Lewis performed remained substantially the same, constituting mostly bench work and administrative work performed at home after business hours. From February to April, 1994, Hooven–Lewis discovered other errors in the lab and communicated them to Dr. Vahey. In May, Hooven–Lewis learned that Dr. Vahey had not told the other labs of the errors, and that a researcher at Walter Reed was going to present findings based on the erroneous data at an AIDS conference in Japan. Hooven–Lewis confronted Dr. Vahey about this, and Hooven–Lewis asserts that Dr. Vahey reacted angrily.

In early June, 1994, Dr. Vahey ordered Hooven–Lewis to begin working with active (non-lysed) HIV samples. On August 23, 1994, Dr. Vahey told Hooven–Lewis to leave the lab after Hooven Lewis refused to let Dr. Vahey communicate with her doctor about her hand tremor. In a meeting on August 30, 1994, several division heads met with Hooven–Lewis to discuss Hooven–Lewis' medical condition and her duties. Colonel David Burke, the director of the Retrovirology Division, decided to take Hooven Lewis out of retrovirology and detail her to other duties pending an evaluation of her medical problem and the impact Hooven–Lewis' medical condition would have on her work handling dangerous infectious, radioactive, and chemical substances. That same day, Hooven–Lewis told Colonel Burke about the laboratory errors and Dr. Vahey's requiring her to work with unlysed agents.

With the help of the Walter Reed personnel office, Hooven Lewis was placed in several temporary assignments pending her medical determination. On October 7 and 11, 1994, Hooven–Lewis first consulted

2. Hooven–Lewis does not allege that the only records Dr. Vahey asked her lab staff to throw out were records of the problem experiments.

the office of Equal Employment Opportunity ("EEO") about her rights and about filing a complaint of discrimination. In that same month, Hooven–Lewis requested that she be permitted to return to Dr. Vahey's lab or be transferred to another lab within Retrovirology. Hooven–Lewis believed that she should be permitted to work in the lab and that her supervisors should accommodate her condition by having others lyse the materials with which she would work. Hooven Lewis' request to return to a lab in Retrovirology included a statement that the only task required of her that was involved in her request for the lysing accommodation was the task of isolating nucleic acids, and that, aside from that, she was able to perform all other duties of her position with Dr. Vahey. However, after repeated requests, Hooven–Lewis never provided the Army with medical records indicating definitively that she was permanently precluded from performing work in the lab handling dangerous agents. Therefore, the Army had no verifiable proof that any accommodation was necessary. On October 22, 1994, after reviewing the conflicting medical documentation supplied by Hooven–Lewis, reviewing Hooven Lewis' job description, and visiting Dr. Vahey's lab, the chief of occupational medicine at Walter Reed, Dr. Kenneth Phillips, issued a medical determination stating that there was no indication that Hooven–Lewis could not perform all of the duties required of her in the labs without restrictions or limitations. In the same month, Hooven–Lewis filed an informal complaint with the EEO.

Hooven–Lewis had been placed in several temporary assignments after her removal from Dr. Vahey's lab, including one in the Logistics Division which lasted several months. Despite her failure to provide the requested medical documentation, the Army granted Hooven–Lewis' request to be returned to Dr. Vahey's laboratory in February, 1995. However, Hooven–Lewis was not given any specific accommodations. Hooven Lewis informed Dr. Vahey that she would only spend ten percent of her time performing laboratory duties; Hooven–Lewis wanted to spend the majority of her time performing managerial duties. Consequently, attempts were made to find Hooven–Lewis another position with duties she would agree to perform. On February 22, 1995, Hooven–Lewis filed a formal complaint with the EEO. In March 1995, Hooven–Lewis was detailed to Dr. McQueen's laboratory in the Department of Gastroenterology. However, once there, Hooven–Lewis refused to do laboratory work involving potentially infectious materials. Dr. McQueen requested that Hooven–Lewis' detail with him be terminated. No other jobs for Hooven–Lewis could be found. Dr. Vahey requested that Hooven–Lewis be removed from federal employment on March 10, 1995. Hooven–Lewis was removed effective July 28, 1995.

Hooven–Lewis filed an action with the Merit Systems Protection Board ("MSPB") on November 29, 1995 to appeal the Army's action removing her from the position of Biologist. Hooven–Lewis alleged that the Army discriminated against her for her disability of having a hand tremor, and failed to reasonably accommodate her hand tremor. Hooven–Lewis also alleged that the Army retaliated against her for her actions with the EEO protesting the discrimination. Finally, Hooven–Lewis alleged that the Army retaliated against her for "whistleblowing" about Dr. Vahey's errors in the lab and destruction of lab protocols. The MSPB dismissed Hooven Lewis' whistle-blowing claim before any hearing, holding that Hooven–Lewis had not made statutorily protected disclosures that qualified as whistle-blowing. The MSPB then held a three-day

hearing in March, 1996 on Hooven–Lewis' remaining claims. The MSPB affirmed the Army's action of removal in an Order issued March 29, 1996. This lawsuit followed.

Hooven–Lewis originally filed suit in the U.S. District Court for the District of Columbia. This case was transferred to the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1404(a). Plaintiff's Amended Complaint asserted 1) disability discrimination in violation of the Rehabilitation Act, 29 U.S.C. § 790 *et seq.*; 2) retaliation for engaging in protected EEO activity, in violation of the Rehabilitation Act; 3) retaliation in violation of the Whistleblower Protection Act, 5 U.S.C. § 2302; 4) intentional infliction of emotional distress; and 5) compelled disclosure of information under the Freedom of Information Act. The transferring court dismissed the intentional infliction of emotional distress and Freedom of Information Act claims. The U.S. District Court for the District of Maryland granted Defendant's motion for summary judgment on Hooven–Lewis' remaining claims. Hooven–Lewis timely filed an appeal to this Court.

## STANDARD OF REVIEW

■ The claims submitted to this Court on appeal from the district court's grant of summary judgment are subject to *de novo* review. *See Mitchell v. Data General Corp.*, 12 F.3d 1310, 1313 (4th Cir.1993) (stating that summary judgment is subject to *de novo* review); 5 U.S.C. §§ 7702(a)(1)(B)(iii), 7702(a)(3)(a) (indicating that Rehabilitation Act claims previously submitted to the Merit Systems Protection Board are subject to judicial review as of the Board's issuance of its decision, if the employee does not file, or have pending, a case before the Equal Employment Opportunity Commission).

■ Rule 56 of the Federal Rules of Civil Procedure requires a court to grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). A court should enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The mere existence of some alleged factual dispute between the parties, however, will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *See id.* at 248, 106 S.Ct. 2505.

■ In determining whether a party is entitled to summary judgment, the record is viewed in the light most favorable to the nonmoving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Therefore, this Court views the facts in a light most favorable to Appellant Hooven–Lewis.

Although, in general, summary judgment motions are subject to *de novo* review, Hooven–Lewis' Whistleblower Protection Act claim is subject to a more

narrow standard of review than Hooven–Lewis' other claims. This Court does not decide whether there exists a genuine issue of material fact as to the whistleblower claims; instead, the Court reviews the claim only to see if the MSPB acted arbitrarily or capriciously, or abused its discretion, in dismissing the whistleblower claim. *See* 5 U.S.C. § 7703(c). Ordinarily, the Court of Appeals for the Federal Circuit undertakes the judicial review of MSPB actions on whistleblowing claims; the Federal Circuit reviews the claim on the administrative record. *See id.* §§ 7701(c), 7703(b)(1). However, where, as here, a claim of discrimination (i.e., violation of the Rehabilitation Act) is coupled with a Whistleblower Protection Act claim, the entire "mixed case" is filed in federal district court, and then reviewed by the applicable court of appeals. *See id.* §§ 7702(a)(2), 7703(b)(2); *see also McAdams v. Reno,* 64 F.3d 1137, 1142 (8th Cir.1995) ("Employees pursuing relief through an EEO mixed case complaint may file a civil discrimination action in federal district court within 30 days of a final decision by the agency...."). Therefore, this Court's *de novo* review of the district court's decision as to the Whistleblower Protection Act claim comprises a determination of whether the MSPB abused its discretion in dismissing Hooven Lewis' claim. Specifically, the Court must affirm the MSPB decision unless the Court finds the decision to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

## DISCUSSION

### I. *The Discrimination Claim*

Hooven–Lewis grounds her argument supporting her claim of discrimination in the assertion that there is a disputed issue of material fact as to whether the Army discriminated against her based on her hand tremor. Hooven–Lewis also argues that there is a genuine issue of material fact as to whether she meets the definition of an individual with a disability under the Rehabilitation Act ("RA"). Hooven–Lewis contends that she is an individual with a disability because her hand tremor "substantially limits" her in the "major life activity" of working. *See* 29 U.S.C. § 706(8)(B) (defining "individual with handicaps"). Hooven–Lewis asserts that she was limited in her ability to obtain work in her field because there were no other positions at Walter Reed for Hooven–Lewis that did not involve dangerous materials. *See Gupton v. Virginia,* 14 F.3d 203, 205 (4th Cir.1994) (holding that to demonstrate a substantial limitation in the major life activity of doing work, an employee must be foreclosed generally from obtaining jobs in her field, not just from continuing in her current position). Alternatively, Hooven–Lewis argues that even if she did not actually have a disability under the RA, she was still "an individual with a disability" under the RA because her employer, the United States Army ("Army"), regarded her as having an impairment that limited her performance of major life activities. *See Cline v. Wal–Mart Stores, Inc.,* 144 F.3d 294, 303 (4th Cir.1998) (finding that an employee is protected from adverse action where employer erroneously perceives the employee to be restricted in ability to perform class of jobs); *Runnebaum v. NationsBank,* 123 F.3d 156, 172 (4th Cir.1997) (en banc) (same). Hooven–Lewis argues that the Army's refusal to accommodate her disability constitutes discrimination.

Hooven–Lewis also argues that the Army's proffered reason for her termination, that Hooven–Lewis was unable to perform the duties of her position, is a

pretext. Hooven–Lewis asserts that the Army's argument that she is not a "qualified individual with a disability" is false, because she can perform her duties commendably with the accommodation of having others lyse active cells before she works with the cells. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 517, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (stating that proof that employer's explanation for adverse employment actions is false is a form of circumstantial evidence probative of intentional discrimination); *Wright v. West,* 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (stating that the factfinder is entitled to consider a party's dishonesty as affirmative evidence of guilt). Moreover, the lysing accommodation is "reasonable" and not an "undue hardship" for the Army, as evidenced by the facts that the accommodation takes little time or expense, and that the Army made the accommodation for Hooven–Lewis for 10 years. Hooven–Lewis therefore contends that the only reasons for the Army's withdrawal of the accommodation and removal of Hooven–Lewis from employment are discrimination and retaliation. For these reasons, Hooven–Lewis asks this Court to reverse the district court's Opinion and Order granting summary judgment in favor of the Army.

In opposition to Hooven–Lewis' arguments, Appellee Caldera, Secretary of the U.S. Army (hereinafter "the Army"), calls for the affirmation of the district court's holding because Hooven–Lewis is not "an individual with a disability" under the RA, and the Army had legitimate bases to terminate Hooven–Lewis' employment. The Army argues that Judge Deborah K. Chasanow of the district court correctly found that, as a matter of law, Hooven–Lewis is not an individual with a disability, nor did the Army regard her as such. The Army asserts that Hooven–Lewis had the burden of proof under the Rehabilitation Act to show that she was a disabled person against whom the Army discriminated. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (setting forth burden shifting scheme in discrimination cases); *St. Mary's Honor Center,* 509 U.S. at 506–08, 113 S.Ct. 2742 (applying *McDonnell Douglas* burden shifting scheme to discrimination case). The Army contends that the burden of proof always remained with Hooven Lewis, but the burden of production would only shift to the Army if Hooven–Lewis demonstrated that she was a qualified individual with a disability who had suffered discrimination at the hands of the Army. *See id.; Doe v. University of Md. Med. Sys. Corp.,* 50 F.3d 1261, 1265 (4th Cir.1995) (stating elements of prima facie case of disability discrimination, including that employee must be disabled under the Act, and otherwise qualified for the employment). The burden of production would shift back to Hooven–Lewis if the Army could show that it had a legitimate basis for terminating Hooven–Lewis. *See St. Mary's Honor Center,* 509 U.S. at 506–07, 113 S.Ct. 2742. Appellee asserts that Hooven Lewis has not made even the initial showing for a discrimination claim because Hooven–Lewis was not substantially limited in her ability to work. Hooven–Lewis' inability to handle "lethal pathogens, such as live viruses, radioactive materials, and chemicals" only limits her in the ability to perform a particular facet of a particular job; this does not constitute a substantial limitation. *See Halperin v. Abacus Tech. Corp.,* 128 F.3d 191, 199 (4th Cir.1997); *Forrisi v. Bowen,* 794 F.2d 931, 934–35 (4th Cir.1986); 29 C.F.R. § 1630.2(j)(3)(i).

Moreover, the Army argues that Hooven–Lewis has not demonstrated that the Army regarded Hooven–Lewis as disabled. *See* 29 C.F.R. § 1614.203(a)(1)(iii). An

employer does not regard an employee as substantially limited in her ability to work simply because it finds her incapable of satisfying the demands of a particular job. *See Forrisi,* 794 F.2d at 934 (citation omitted); *Chandler v. City of Dallas,* 2 F.3d 1385, 1393 (5th Cir.1993) (stating that employer does not regard employee as having substantial limitation just because it believes employee is unable to perform task with adequate safety margin). The Army argues that its placement of Hooven–Lewis in other positions demonstrates that the Army did not regard Hooven Lewis as having a disability. *See Beaver v. Delta Air Lines,* 43 F.Supp.2d 685, 693 (N.D.Tex.1999) (citations omitted).

The Army further argues that even if Hooven–Lewis was disabled, she was not a *"qualified* individual with a disability." She was not qualified because an essential aspect of her job was handling potentially dangerous substances, and she could not do this. *See Jasany v. U.S. Postal Service,* 755 F.2d 1244, 1250 (6th Cir.1985); *Champ v. Baltimore County,* 884 F.Supp. 991, 998 (D.Md.1995).

The Court finds that the record and the law support the Army's arguments, and therefore affirms the district court's grant of summary judgment for the Army on Hooven–Lewis' discrimination claim. Hooven–Lewis' claim of discrimination fails because she has not made a prima facie case of discrimination under the Rehabilitation Act, 29 U.S.C. § 790 *et seq.,* 29 C.F.R. § 1614.203. As an initial matter, Hooven Lewis is incorrect in stating that whether Hooven–Lewis is disabled under the statute is "a material fact in dispute" requiring denial of summary judgment. Whether Hooven–Lewis meets the definition of the statute, and therefore can bring a claim under the statute, is a question of law for a court, not a question of fact for a jury. Therefore, although the question of wheth-

er the Army's actions constituted discrimination could be a question for the jury, the preliminary issue of whether Hooven–Lewis is covered by the statute is one for the Court. The district court correctly found that Hooven Lewis' claim of discrimination under the RA could not stand because Hooven–Lewis is not covered by the statute.

The standards used to determine whether an employer has discriminated under the Rehabilitation Act are the standards applied under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111 *et seq.,* and the provisions of sections 501 through 504, and 510 of the ADA, 42 U.S.C. §§ 12201–12204 and 12210. *See* 29 U.S.C. § 791(g). Therefore, the general rule is that no covered entity shall discriminate against a qualified individual with a disability because of the disability. *See* 42 U.S.C. § 12112(a). Discrimination under the RA includes "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of the applicant." *Id.* § 12112(b)(1). Discrimination also includes:

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

*Id.* § 12112(b)(5)(A). Hooven–Lewis argues that the Army classified her as unable to work as a biologist in the Army in the field of Retrovirology, and failed to make reasonable accommodation for her hand tremor. The Army counters that its actions in compelling Hooven–Lewis to work with unlysed substances, removing

Hooven–Lewis from laboratory work, and ultimately removing Hooven–Lewis from civil service employment with the Army were justified and did not amount to discrimination.

Before addressing whether an employer's actions qualify as discrimination, a party must first demonstrate that he or she is an individual with a disability under the RA. An "individual with a disability," or handicap, is defined as one who:

(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities;

(ii) has a record of such an impairment; or

(iii) is regarded as having such an impairment.

Rehabilitation Act, 29 U.S.C. § 705(20)(B); Rehabilitation Act, 29 C.F.R. § 1614.203(a)(1); see also Americans with Disabilities Act, 42 U.S.C. § 12102(2) (giving an almost identical definition for individuals with a "disability," and defining the term "disability" that is applied in the sections of the ADA used to determine whether the RA has been violated). To qualify under the RA as a protected disability that substantially limits a major life activity, the impairment must limit functions "such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1614.203(a)(3). Hooven–Lewis' discrimination claim fails because her hand tremor does not substantially limit a major life activity, and the Army did not regard Hooven–Lewis as one limited in any major life activities.

■ The major life activity which Hooven–Lewis says her tremor limits is the ability to work. However, Hooven–Lewis' hand tremor does not prevent her from working, as demonstrated by her employment for ten years in the Army laboratories. The tremor merely prevents Hoo-

ven–Lewis from handling certain materials safely. Therefore, Hooven–Lewis is not substantially limited from working, but only from doing "bench work" in the Army lab as a retrovirologist. This circuit has held that a plaintiff seeking to demonstrate a limitation in her ability to work must demonstrate that she is foreclosed generally from the opportunity to obtain the type of employment involved, not merely that she is "incapable of satisfying the singular demands of a particular job." Forrisi, 794 F.2d at 934–35; see also Gupton, 14 F.3d at 205 (quoting Forrisi, 794 F.2d at 935); 29 C.F.R. § 1630.2(j)(3)(i) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.").

Hooven–Lewis asserts that it is not her contention that she is incapable of satisfying the demands of a particular job, but instead that she is foreclosed from the opportunity to obtain the type of employment at issue in this case. Gupton, 14 F.3d at 205 (citing Forrisi, 794 F.2d at 935). Hooven–Lewis argues that she is disabled, or at least perceived as disabled, because she is substantially limited in her ability to work in her field. The regulations define "substantially limited" as being significantly restricted in the ability to perform either a "class of jobs" or a "broad range of jobs in various classes." 29 C.F.R. § 1630.2(j)(3)(i). Hooven–Lewis does not argue that she is not able to perform a range of jobs in other fields. Yet, Hooven Lewis has not demonstrated that she is disqualified from performing a class of jobs, because she may still perform jobs utilizing her training, knowledge, skills, and abilities as a biologist.

Hooven–Lewis' inability to demonstrate that she is unable to perform work in her field can be analogized to the employee's inability to do so in Gupton v. Virginia.

In *Gupton,* the plaintiff alleged that her allergy to tobacco smoke limited her ability to work. However, the Fourth Circuit held that plaintiff had only demonstrated that she could not work in her current position, not that she was foreclosed generally from finding work in her field. *See Gupton,* 14 F.3d at 205. This was especially the case because Gupton's employer offered to accommodate Gupton's allergy by giving her a position in a smoke-free facility. *See id.* at 204. Gupton's ability to actually perform the work if not near tobacco smoke evidenced that Gupton could still do work in her field. Similarly, Hooven–Lewis' own arguments demonstrate that Hooven–Lewis can still do work in her field.

Where a worker demonstrates that his condition makes him unsuitable for a position with a particular employer, but demonstrates that he has "no difficulty in obtaining other jobs in his field," the worker has not demonstrated that he is substantially limited in his ability to work. *See Forrisi,* 794 F.2d at 935. Hooven–Lewis' own repeated assertions demonstrate that she can do work in her field. Hooven Lewis points out that she did work in her field for ten years, and that she can continue to work with the HIV virus as long as the samples are lysed (this can be analogized to Gupton's ability to work with the accommodation of a smoke-free office). Hooven–Lewis also points out that she was offered several positions in her field with other laboratories, notwithstanding her tremor. (J.A. 507, 518: Declaration of Cheryl M. Hooven–Lewis ¶ 58.) This circuit has held that there is no indication that an employee's impairment has limited his ability to perform a wide range of jobs if he can, and does, find comparable employment with a different employer. *See Halperin,* 128 F.3d at 199. Moreover, Hooven–Lewis states that her tremor limited her ability to work in positions in which she was required to handle lethal pathogens (Appellant's Brief at 20); however, Hooven–Lewis may still hold positions as a biologist handling non-lethal pathogens and other materials (J.A. 526: Memo of Discussion with Dr. Suzanne Gartner (indicating that Gartner had a position in her lab for Hooven–Lewis not involving infectious diseases).) In addition, Hooven–Lewis' own argument is that she wanted the dangerous duties taken away, and that, thereafter, she could still do the rest of her duties (e.g., administrative and supervisory duties). Therefore, there is substantial evidence that Hooven–Lewis can still do work in her field. Thus, Hooven–Lewis is not disabled under the RA.

■ Not only is Hooven–Lewis not disabled under the RA, the Army did not regard her as disabled. The Army did not regard Hooven–Lewis as disabled because it believed that she could in fact do the particular work that she asserted that she could not do: Vahey required Hooven–Lewis to work with unlysed materials (J.A. 8, 13: Amended Compl. ¶¶ 36(a), 36(b)); Diane Lewis reported that the Army felt it needed additional documented medical proof of why Hooven–Lewis could not work in her laboratory placements (J.A.: 142, 155: MSPB hearing testimony of Lillian Diane Lewis); Hooven–Lewis was placed in Gastroenterology doing lab work that she had done before (J.A. 121, 126–29: MSPB hearing testimony of Dr. Charles McQueen); and the Chief of Occupational Medicine reviewed Hooven–Lewis' medical documentation and found that Hooven–Lewis' condition did not warrant any limitations, restrictions, or accommodations (J.A. 229, 640: Medical Determination of Dr. Kenneth G. Phillips). Further evidence that the Army did not regard Hooven–Lewis as disabled is that several officials believed that Hooven–Lewis was

faking her tremor. (J.A. 237, 239: Proposed Removal Memorandum (indicating that the Army believed that Hooven–Lewis simply refused to perform her duties, not that she was handicapped); J.A. 142, 171: Testimony regarding Col. Boswell before the MSPB, Lines 17 20 (indicating that Boswell thought Hooven–Lewis was faking); J.A. 89, 105: MSPB Initial Decision n. 11 (same); J.A. 414, 436: Pl. Opp. to Def. Mot. for Summ. J. and Pl.'s Cross Mot. for Summ. J. (stating that Vahey wrote at least two memoranda accusing Hooven–Lewis of forging doctors' notes).) Moreover, even when thinking that accommodations needed to be made for Hooven–Lewis, the Army did not regard Hooven–Lewis as being unable to perform the life activity of doing work in general; the Army tried to find a position for Hooven–Lewis that "equaled her profession." *See* J.A. 140, 144: Lewis MSPB testimony, Lines 8–9; *see also Chandler,* 2 F.3d at 1392–93 (holding that employer's belief that employee cannot perform task with adequate safety margin does not establish per se that employer regards employee as having substantial limitation on ability to work in general). The Army placed Hooven–Lewis in positions in the Logistics Division, a medical library, and the Gastroenterology Department. An employee is not "regarded as" having a disability where the employer places the employee in another position. *See Beaver v. Delta Air Lines,* 43 F.Supp.2d 685, 693 (N.D.Tex.1999). In sum, the evidence shows that Hooven–Lewis is not disabled under the RA, nor was she regarded as disabled. Therefore, Hooven–Lewis cannot make out a prima facie case of discrimination under the Rehabilitation Act. For these reasons, the district court's Opinion granting summary judgment for the Army on Hooven–Lewis' discrimination claim is affirmed.

Because Hooven–Lewis has not demonstrated that she meets the definition of a disabled individual under the RA, the Court need not reach several questions: (1) whether Hooven–Lewis was a "qualified individual with a disability" (i.e. one who, with or without reasonable accommodation, could perform the essential functions of the employment position, *see* 42 U.S.C. § 12111(8)); (2) whether the accommodation of having others lyse Hooven–Lewis' samples was reasonable; and (3) whether the Army's stated rationale for Hooven–Lewis' removal, that Hooven–Lewis was unqualified for her position, was pretextual. *See, e.g., Jasany* at 1250 (holding that because plaintiff did not establish its prima facie case of discrimination, it was unnecessary to address the question of reasonable accommodation).

## II. *The Rehabilitation Act Retaliation Claim*

Hooven–Lewis argues that the Army's refusing to continue accommodating her disability, removing her from her position as a laboratory technologist, and ultimately terminating her employment altogether were acts of retaliation for her EEO activity. Hooven–Lewis asserts that the adverse employment actions taken against her began only after she went to the EEO to complain of discrimination. *See Causey v. Balog,* 162 F.3d 795, 803 (4th Cir.1998) (stating that prima facie case of retaliation includes demonstration that employee engaged in protected activity, that employer took adverse employment action against her, and a causal connection between the employment action and the protected activity). Hooven–Lewis reported to Colonel Boswell that Dr. Vahey had stopped accommodating her disability. Also, Hooven–Lewis had repeated contact with the EEO. Hooven–Lewis points out that Dr. Vahey threw Hooven–Lewis out of her lab on the same day that Dr. Vahey was in-

formed that she had to attend an EEO mediation with Hooven–Lewis. Hooven Lewis contends that the short time between the EEO activity and the disciplinary actions taken against her strengthens the argument that the disciplinary actions were due to her protected activity. *See Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.1989).

As with her discrimination claim, Hooven–Lewis argues that the Army's proffered reason for her termination, that Hooven Lewis was unable to perform the duties of her position, is a pretext. Hooven–Lewis asserts that the Army's argument that she is not a "qualified individual with a disability" is false, because she demonstrated for ten years that she could perform her job with a minor accommodation. *See St. Mary's Honor Center,* 509 U.S. at 517, 113 S.Ct. 2742 (stating that proof that employer's explanation for adverse employment action is false is an indication of intentional discrimination); *Wright,* 505 U.S. at 296, 112 S.Ct. 2482 (stating that factfinder is entitled to consider party's dishonesty as affirmative evidence of guilt). Moreover, the lysing accommodation is "reasonable" and not an "undue hardship" for the Army. The procedure takes thirty seconds to two minutes a day. In an hour, enough material could be lysed to keep an entire laboratory busy for more than a week. Therefore, Hooven–Lewis contends that retaliation is the only reason for the Army's withdrawal of the accommodation and removal of Hooven–Lewis from employment. For these reasons, Hooven–Lewis asks this Court to reverse the district court's Opinion granting summary judgment in favor of the Army on Hooven–Lewis' RA retaliation claim.

In opposing Hooven–Lewis' arguments, the Army grounds its argument in the fact that Hooven–Lewis cannot establish a causal connection between her EEO activities and the personnel actions the Army took with regard to Hooven–Lewis. *See Causey,* 162 F.3d at 803 (setting forth causation as an element of a retaliation claim). The Army contends that the personnel actions leading up to Hooven–Lewis' removal, and the ultimate decision to remove Hooven–Lewis from federal employment, occurred before Hooven–Lewis' protected EEO activity. Dr. Vahey began disciplinary actions in February of 1995, and Hooven–Lewis filed her EEO complaint on or about April 1, 1995. Hooven–Lewis' alleged whistleblower activities, dating farther back, offer no support for her claim of retaliation under the RA.

 The Court holds that Hooven–Lewis' RA retaliation claim fails because, even taking all inferences in favor of Hooven–Lewis, she has not demonstrated a causal connection between any protected activity and adverse employment action. Adopting provisions of the ADA, the RA provides that no person shall retaliate against an individual because that individual engages in activity challenging an employer's alleged discrimination. More specifically, the RA states that no person shall discriminate against any individual because the individual has opposed any discriminatory employment action or practice, or made a charge of discrimination. *See* 42 U.S.C. § 12203(a). In order to establish a prima facie claim of retaliation, one must demonstrate that "(1) plaintiff engaged in protected activity, such as filing an EEO complaint; (2) the employer took adverse employment action against plaintiff; and (3) a causal connection existed between the protected activity and the adverse action." *Causey,* 162 F.3d at 803. Hooven–Lewis argues that the Army retaliated against her for her allegations of discrimination by changing her job description, removing her from Dr. Vahey's lab, requiring her to work with unlysed substances, and ulti-

mately removing her from employment with the Army. However, Hooven–Lewis is unable to draw a causal connection between her protected activities and the Army's adverse employment actions.

Hooven–Lewis' first "charge" of discrimination occurred on October 7, 1994.[3] (J.A. 448, 457: Pl.'s Statement of Material Facts to Which There is No Genuine Dispute ¶ 92.) Hooven–Lewis sought EEO counseling and was interviewed over the telephone by Ms. Leticia Velasquez. Hooven–Lewis is correct that the Court need not only look upon a formal complaint filed with the EEO as "protected activity." *See Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir.1981). Hooven–Lewis' accusation of discrimination to Ms. Velasquez at the EEO qualifies as a protected opposition to alleged discrimination. *See id.; Balazs v. Liebenthal*, 32 F.3d 151, 158 (4th Cir.1994) (holding that expressions of discrimination, even where not true, constitute protected activity); 42 U.S.C. § 12203(a). Similarly, Hooven–Lewis' informal contacts with the EEO and informal complaints are also protected activities if the accused person or entity knew about them. *See Armstrong*, 647 F.2d at 448; *Williams*, 871 F.2d at 457 (indicating that employer must be aware of disclosure before he or she can retaliate against it). However, Hooven–Lewis has failed to draw a causal connection between these protected activities and the course of events leading to changes in Hooven–Lewis' job status and to Hooven–Lewis' ultimate removal from employment with the Army.

According to Hooven–Lewis, Dr. Vahey started requiring Hooven–Lewis to work with live HIV viruses in the first week of June, 1994. (J.A. 448, 455: Pl.'s Statement of Material Facts ¶¶ 69–70.) Hooven–Lewis does not establish a causal link between this first supposedly adverse employment action and any protected activity. The June, 1994 action is the result of a difference of opinion about the need for the accommodation and what Hooven–Lewis' true duties were. It is clear from Hooven Lewis' declaration and all of the evidence that Dr. Vahey doubted the truthfulness of Hooven–Lewis' claims of a physiological hand tremor. (*E.g.*, J.A. 507, 517: Declaration of Cheryl M. Hooven–Lewis ¶ 50 (indicating that Vahey demanded permission to communicate with Hooven–Lewis' doctor); J.A. 237, 239: Pro-

---

3. Hooven–Lewis had an appointment with Colonel Richard N. Boswell on June 30, 1994 to discuss Hooven–Lewis' feeling that Dr. Vahey was requiring Hooven–Lewis to work outside of her job description and was not accommodating Hooven–Lewis' tremor. (J.A. 448, 455: Pl.'s Statement of Material Facts ¶ 74.) However, even if Hooven–Lewis' statements in that conversation rose to the level of an accusation of discrimination, no action of reprisal or retaliation can be causally linked to the conversation. Dr. Vahey was already requiring Hooven–Lewis to work with unlysed materials, and Dr. Vahey merely continued to do this for approximately the next three months, notwithstanding Hooven–Lewis' meeting with Boswell. (*Id.* at 455–56:¶¶ 69–79; *see also* J.A. 507, 516: Declaration of Cheryl M. Hooven–Lewis ¶ 44 ("Boswell took no corrective action").) Dr. Vahey's throwing Hooven–Lewis out of Vahey's lab on August 23, 1994 is causally linked to Hooven–Lewis' refusal to work with unlysed materials as ordered by Dr. Vahey in early June, not linked to the Boswell meeting of June 30, 1994. The June 30, 1994 meeting did not seem to have any influence or effect on the changes of employment position and status imposed on Hooven–Lewis. (J.A. 507, 516: Decl. of Hooven–Lewis ¶ 44 (indicating that Boswell took no action).) Hooven–Lewis' brief mentions the occurrence of the meeting, but does not draw a causal connection to any actions of "reprisal." (Appellant's Reply Brief at 9.) Hooven–Lewis' initial motion for summary judgment does not reference the meeting at all. (J.A. 414.)

posed Removal Memo.[4]) Dr. Vahey felt that Hooven–Lewis' refusal to do laboratory work handling hazardous substances was a flat refusal to do her duties, and that this disrupted other workers and the efficiency of the lab. (J.A. 211, 215: Declaration of Dr. Maryanne T. Vahey ¶ 11.) The June, 1994 change of Hooven–Lewis' duties was the first "adverse" action by Dr. Vahey and precipitated all others, and ultimately led to Dr. Vahey's evicting Hooven–Lewis from the lab on August 23, 1994.

The manner in which Dr. Vahey executed the changes in Hooven–Lewis' status appear to be a result of personality conflicts. In May of 1994, Dr. Vahey wrote Hooven–Lewis an e-mail ordering Hooven–Lewis to "come down here now!!!!!" and stated, "YOU ARE DRIVING ME NUTS CHERYL!!!" (J.A. 664: cc-mail forwarded from Hooven–Lewis to her husband). In her response to Dr. Vahey's Proposal of Removal, Hooven–Lewis indicated several instances where Hooven–Lewis verbally disagreed with Dr. Vahey's actions in the laboratory with regard to laboratory procedures and other personnel. (J.A. 242, 251–52: Response to Maryanne Vahey's Proposed Removal of Cheryl Hooven–Lewis.) After these disagreements, Dr. Vahey began ordering Hooven–Lewis to perform inferior duties outside of her job description and to handle unlysed viruses. (Id.) When Hooven–Lewis protested, Dr. Vahey screamed at Hooven–Lewis, and on more than one occasion responded, " '[T]his is my lab and you do exactly as I tell you to.' " (Id. 253–254.) These representations made in Hooven–Lewis' own pleading indicate that Dr. Vahey's actions in changing Hooven Lewis' duties, job description, and level of accommodation were a result of Hooven–Lewis' confrontations with Dr. Vahey in

the lab. Personality conflicts are not actionable as retaliation.

In short, the evidence demonstrates that the majority of events that Hooven–Lewis alleges were acts of "reprisal" and "retaliation" occurred before Hooven–Lewis' October 7, 1994 contact with the EEO. These events could not be retaliatory, because Hooven–Lewis' contact with the EEO did not cause these acts of reprisal, but, instead, the alleged acts of "reprisal" caused Hooven–Lewis to seek EEO relief. The events and interactions between Hooven–Lewis and the Army that preceded Hooven–Lewis' initial contact with the EEO were the ultimate cause of Hooven–Lewis' reassignment of duties and removal from civil employment with the Army. For these reasons, the Court holds that Hooven–Lewis has not made out a prima facie case for retaliation under the Rehabilitation Act. Therefore, summary judgment on the Rehabilitation Act retaliation claim is proper.

### III. *The Whistleblower Protection Act Retaliation Claim*

Hooven–Lewis argues that the decision of the MSPB dismissing the WPA claim should be reversed as arbitrary and capricious. Hooven–Lewis asserts that the MSPB did not make any factual findings, did not detail the evidence upon which it relied, and did not discuss the legal standards it applied in reaching its decision. Hooven–Lewis contends that the statements she made to Dr. Loring, Colonel Burke, and Colonel Holland were protected disclosures under the WPA, and that she suffered reprisals as a result of making these disclosures. *See* 5 U.S.C. § 2302(b)(8)(A)(ii) (defining protected disclosures under the WPA); *Willis v. Dept. of Agriculture,* 141 F.3d 1139, 1143 (Fed.

---

**4.** Yet another document indicates that Dr. Vahey exclaimed that Hooven–Lewis' tremor was all in her mind. (J.A. 280, 281: Statement of Susan Loring ¶ 10.)

Cir.1998) (stating that for statements to be protected disclosures under the WPA, they must be made to people in a position to remedy the problem). Hooven–Lewis contends that the short time between her whistle-blowing activity and her disciplinary actions strengthens the argument that the disciplinary actions were due to her protected activity. *See Williams*, 871 F.2d at 457.

As with her other claims, Hooven–Lewis argues that the Army's proffered reason for her termination, that Hooven–Lewis was unable to perform the duties of her position, is a pretext. Hooven–Lewis asserts that the Army's argument that she could not perform the duties of her position is false, because she can perform her duties commendably with the accommodation of having others lyse active cells before she works with the cells. *See St. Mary's Honor Center*, 509 U.S. at 517, 113 S.Ct. 2742; *Wright*, 505 U.S. at 296, 112 S.Ct. 2482. The Army made the accommodation for her for ten years, and only ceased doing so because of Hooven–Lewis' whistleblowing. For these reasons, Hooven–Lewis asks this Court to reverse the district court's Opinion granting summary judgment against Hooven–Lewis on the WPA claim.

■ The Army argues that the MSPB was neither arbitrary nor capricious in dismissing Hooven–Lewis' claim of retaliation under the WPA. Most of Hooven–Lewis' supposed whistleblowing were disclosures made to Dr. Vahey about errors in Dr. Vahey's data. As a matter of law, disclosure of wrongdoing to the wrongdoer herself is not whistleblowing. *See Willis*, 141 F.3d at 1143 (citation omitted). The Army further contends that even if Hooven–Lewis' disclosures to Colonel Burke were protected disclosures under the Act, Hooven–Lewis' claim still fails because she cannot demonstrate that "the disclosure was a

contributing factor to the [adverse] personnel action taken." *Carr v. Social Sec. Admin.*, 185 F.3d 1318, 1322 (Fed.Cir. 1999). The decision to remove Hooven–Lewis from the laboratory was made several days before her August 30, 1994 disclosure to Colonel Burke. Therefore, no causal connection between that decision and the disclosure can be made.

In addition, the Army argues that even if the statements to Colonel Burke resulted in Hooven–Lewis' removal from federal service, Hooven–Lewis' WPA claim still fails, because no finding of reprisal is made if an agency demonstrates that it would have taken the same personnel action in absence of the protected disclosure. *See id.;* 5 U.S.C. § 1221(e)(2). After reviewing hundreds of pages of documents in preparation for Hooven–Lewis' hearing, the MSPB stated in its Decision that the Army would have still removed Hooven–Lewis from service because of her inability to perform the duties of her position. *See* MSPB Initial Decision, n. 12 (citing *McCabe v. Dept. of the Air Force*, 62 M.S.P.R. 641, 645 (M.S.P.B.1994), *aff'd,* 62 F.3d 1433 (Fed.Cir.1995)). The Army asserts that, in its limited review of the MSPB's decision, the Court cannot find that this evidence-based estimation was made arbitrarily and capriciously.

This Court affirms the district court's ruling upholding the MSPB's decision to dismiss Hooven–Lewis' WPA claim. The Court holds that the MSPB had sufficient evidence before it to dismiss Hooven–Lewis' WPA claim and made a reasoned decision. The MSPB dismissed the claim before Hooven–Lewis' full hearing before the Board based on a two-page memorandum by Hooven–Lewis. (J.A.: 674, 700: District Court Opinion, at 27.) Although this memorandum was not presented to this Court in the Joint Appendix, the record demonstrates that Hooven–Lewis asserted

in her memo that the Army retaliated against her because of her disclosures to Dr. Vahey and Colonel Burke regarding the use of erroneous data and the destruction of laboratory protocols. Based on the manner in which Hooven–Lewis has detailed the disclosures to this Court, and the space Hooven–Lewis used to do so, it is easily conceivable that Hooven–Lewis could have provided the MSPB in two pages all of the information necessary to render a judgment as to whether the disclosures constituted whistleblowing under the Act. In fact, Hooven–Lewis does not argue that the MSPB grounded its decision on insufficient evidence, arguing only that because the MSPB did not articulate in detail the basis of its decision that the MSPB acted arbitrarily and capriciously. Hooven–Lewis does not provide any argument as to why the MSPB's decision that Hooven–Lewis' disclosures were not protected was arbitrary. (Appellant's Opening Brief at 26.) The reference to Hooven–Lewis' WPA claims in the MSPB's decision reflects that the MSPB considered the evidence before it and compared Hooven–Lewis' submissions with the requirements of the statute. (J.A. 89,107: MSPB Initial Decision at 19 n. 12.) Thus, there is no indication that the MSPB acted arbitrarily and capriciously.

■ Moreover, the MSPB's finding that Hooven–Lewis' statements to others were not protected disclosures is supported by the record. To maintain a claim of retaliation under the WPA, Hooven–Lewis had to establish (1) that she engaged in a whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8); and (2) based on the protected disclosure, the Army took or failed to take a personnel action as defined by 5 U.S.C. § 2302(a). *See Willis,* 141 F.3d at 1142. Regarding the first factor, a "protected disclosure" is:

any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences a violation of any law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

5 U.S.C. § 2302(b)(8). An additional element to the first factor is that the disclosure evidence an intent to raise an issue with a higher authority who is in a position to correct the alleged wrongdoing. *See Willis,* 141 F.3d at 1143; *Carr,* 185 F.3d at 1326 ("WPA is meant to encourage disclosures to persons who may be in a position to act to remedy it."). The second factor for a claim under the WPA is common to all actions for retaliation, and is in essence a requirement of a causal connection. *See, e.g., Causey,* 162 F.3d at 803 (setting forth elements of claim of retaliatory discharge); *see also Willis,* 141 F.3d at 1143 (citing 5 U.S.C. 1221(e)(1)) (stating that an employee must show by preponderance of evidence that protected disclosure was made and was contributing factor in the personnel action).

The MSPB was clearly not arbitrary or capricious in finding that Hooven–Lewis' statements to Dr. Vahey about Vahey's failure to inform others of the lab errors and Dr. Vahey's destruction of lab protocols did not constitute protected activity under the WPA. With respect to Dr. Vahey, the first factor for demonstrating a whistle-blower claim is absent: a protected disclosure. Hooven–Lewis' statements to Dr. Vahey about Vahey's own wrongdoing did not evidence an intent to disclose Dr. Vahey's wrongdoing to an authority higher than Dr. Vahey who could remedy the wrongdoing. *See Willis,* 141 F.3d at 1143; *Carr,* 185 F.3d at 1326. Criticism directed at the wrongdoer herself is not whistle-blowing. *See Willis,* 141 F.3d at 1143.

The MSPB was also not arbitrary or capricious in finding that Hooven–Lewis could not demonstrate a WPA claim for her statements to Colonel Burke. Although Hooven–Lewis' statements to Burke qualify as protected disclosures under the WPA, the evidence demonstrates that adverse employment action was taken by Dr. Vahey and Burke before the disclosures; therefore the disclosures could not have been a contributing factor to the personnel actions. Dr. Vahey took away Hooven–Lewis' duties as laboratory manager in June of 1994. Burke drafted the request that Hooven–Lewis be detailed out of Retrovirology in August of 1994. Moreover, although Burke drafted the memo detailing Hooven–Lewis to other duties on the same day that Hooven–Lewis told Burke of Dr. Vahey's failure to accommodate her tremor and showed Burke her notes detailing the lab errors, Burke drafted the memo and showed it to Hooven–Lewis *before* Hooven–Lewis showed him her notebooks. (J.A. 121, 133: MSPB testimony of Col. Burke, Lines 16–19 (indicating that Burke showed Hooven–Lewis the memo during Hooven–Lewis' meeting with Burke, Vahey, Boswell, and Mace); J.A. 618, 621: Burke Deposition, Lines 6–11 (indicating that Hooven–Lewis' disclosures occurred after the memo and the meeting).) Therefore, Burke made decisions precipitating Hooven–Lewis' removal from civil service employment before Hooven–Lewis engaged in whistleblowing activity.

Although not addressed by the district court, and apparently not addressed by the MSPB, Hooven–Lewis suggests on appeal that her statements to Dr. Susan Loring constituted whistleblowing activity. (Appellant's Reply Brief at 4 ¶¶ 14–15.) Because this argument was not raised before the MSPB, it is not properly before this Court. WPA claims are usually first brought before the Office of Special Counsel, and then appealed to the MSPB. *See*

*Willis,* 141 F.3d at 1143. However, because this is a "mixed case" comprising WPA and RA claims, it was brought before the MSPB and is now appealed to this Court. *See id.;* J.A. 674, 688, 698: District Court Opinion at 15, 25 (and accompanying citations). In the usual case, the MSPB will not consider on appeal alleged protected disclosures where a claimant has failed to raise the disclosures with the Office of Special Counsel. *See Willis,* 141 F.3d at 1144 (citations omitted). Similarly, Hooven–Lewis did not raise the issue of the alleged protected disclosures to Loring before the MSPB and should not be able to raise them on appeal to this Court.

Notwithstanding, if the Loring statements were considered by the MSPB (or this Court), it would not have been arbitrary or capricious for the MSPB to find that the statements to Loring were not protected disclosures that contributed to the personnel actions against Hooven–Lewis. The MSPB could reasonably find that Hooven–Lewis' statements to Loring did not rise to the level of protected disclosures. Dr. Loring's Statement evidences a friendly relationship in which Hooven–Lewis shared with Dr. Loring personal details as well as details about her work. (J.A. 280, 281; Statement of Susan Loring ¶ 8, ¶¶ 9–14.) Loring states that when Hooven–Lewis first contacted Loring, it was to get Loring's "professional opinion" about the potential dangers of the errors discovered in the lab. (*Id.:* ¶ 13.) Consequently, one could find that Hooven–Lewis' statements to Loring "did not evidence an intent to raise the issue with higher authorities who were in a position to correct the alleged wrongdoing." *Willis,* 141 F.3d at 1143.

Moreover, Hooven–Lewis has provided no evidence of a causal connection between the statements and the personnel

actions taken against Hooven–Lewis. In a case involving alleged violations of the Age Discrimination in Employment Act, the Fourth Circuit relied on *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir.1998), to find that a plaintiff had not met the causation element for retaliation claims. *See Causey*, 162 F.3d at 803. The *Dowe* court held that a lengthy time lapse between the employer becoming aware of the claimant's protected activity and the alleged adverse employment action negated any inference that a causal connection existed. 145 F.3d at 657. The court in *Causey* held that a 13 month interval was too long to establish causation absent further evidence of retaliation. In this case, six months elapsed between Hooven–Lewis' disclosure to Dr. Loring and Dr. Vahey's alleged reprisal of Hooven–Lewis by withdrawing Hooven–Lewis' lysing accommodation. (J.A. 280, 281–82: Loring Statement (indicating that Hooven–Lewis spoke with Loring about the errors in Vahey's data in December, 1993); J.A. 448, 455: Pl.'s Statement of Material Facts ¶¶ 69–70 (indicating that Vahey first withdrew the accommodation in the first week of June, 1994).)[5] A six month lag is sufficient to negate any inference of causation. *See Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir.1997) (holding that four month lag between protected activity and termination not sufficient to justify inference of causation), *cited in Causey*, 162 F.3d at 803. Furthermore, Hooven–Lewis presented no evidence that Vahey knew of Hooven–Lewis' disclosure to Loring. Without knowledge of the "protected disclosure," the disclosure could not have been the cause of the alleged reprisals. *See Cline*, 144 F.3d at 302 (indicating that the retaliator retaliated based on knowledge of the protected activity); *Williams*, 871 F.2d at 457 (finding that plaintiff made prima facie case of retaliatory discharge upon showing that she was fired after employer became aware of the filing of a discrimination charge).

For these reasons, the Court holds that the MSPB's findings were neither arbitrary nor capricious, and the MSPB did not abuse its discretion. Therefore, the district court's ruling granting summary judgment for the Army on the WPA retaliation claim is affirmed.

---

**5.** In her opening brief, Hooven–Lewis states that Dr. Vahey stopped accommodating Hooven–Lewis and took away Hooven–Lewis' managerial duties within a month of the disclosure to Dr. Loring. (Appellant's Opening Brief at 23.) Hooven–Lewis indicates that she made her first disclosure to Dr. Loring in May, 1994. (*Id.*) However, this is a different date than that provided by Dr. Loring (J.A.: 280, 281: Loring Statement ¶ 13.) Dr. Loring indicates that Hooven–Lewis first spoke to Dr. Loring about the matter in December 1993. This date is in line with Hooven–Lewis' assertion that she found the errors in the data in November of 1993. (*E.g.*, Appellant's Opening Brief at 23.) Dr. Loring's statement further suggests that the first disclosure to Dr. Loring was in December 1993 because Dr. Loring indicates that a few weeks after her first communication with Hooven–Lewis, Hooven–Lewis contacted her again to inform Loring that Vahey was requiring Hooven–Lewis to destroy laboratory documents. (J.A. 280, 282: Loring Statement ¶ 14.) Hooven–Lewis' Amended Complaint indicates that the destruction of the documents occurred in late winter of 1993, as stated by Dr. Loring. (Amended Compl. ¶ 32.) In addition, Hooven–Lewis' own recitation of facts suggests that the Loring disclosure occurred in December 1993, shortly after Hooven–Lewis discovered the errors and discussed the discovery with Dr. Vahey. (J.A. 448, 454: Pl.'s Statement of Material Facts ¶¶ 56–60.)

However, regardless of when they occurred, Hooven–Lewis has provided no evidence that Vahey knew about the statements Hooven–Lewis made to Loring. Therefore, Hooven–Lewis has not demonstrated a causal connection between the statements and the personnel actions taken by Vahey.

*CONCLUSION*

The Court affirms the district court's Opinion granting summary judgment on all of Hooven–Lewis' claims. Hooven–Lewis does not have a disability under the RA because her hand tremor does not substantially limit her in any major life activity. Hooven–Lewis' ability to work in laboratories handling non-infectious and non-hazardous materials, and her ability to do administrative work, demonstrate that she can still do work in her field. Therefore, Hooven–Lewis is not limited from work in general or in the class of jobs for which she is trained. The evidence also demonstrates that the Army did not regard Hooven–Lewis as disabled, because it believed that Hooven–Lewis could do the particular work that she asserted that she could not do. Moreover, the Army did not regard Hooven–Lewis as being unable to perform the life activity of doing work in general because the Army placed Hooven–Lewis in positions in the Logistics Division, the library, and the Gastroenterology Department. Therefore, Hooven–Lewis cannot make out a prima facie case of discrimination under the Rehabilitation Act.

In addition, Hooven–Lewis has not made out a prima facie case of retaliation for protected activities under the Rehabilitation Act. Hooven–Lewis has not demonstrated a causal connection between any protected activity and her transfer out of Retrovirology, or between her protected activity and her removal from civil employment with the Army.

Lastly, the MSPB's decision dismissing the Whistleblower Protection Act claim is not per se arbitrary and capricious simply because there was not a lengthy discussion of the bases of the MSPB's decision. The Administrative Law Judge sitting on the MSPB reviewed Hooven–Lewis' two-page memorandum, which indicated the disclosures that Hooven–Lewis believed were protected disclosures. Although the ALJ made its decision before the three day hearing, the ALJ's reference in its decision to Hooven–Lewis' claim under the WPA evidences a consideration of the facts pertinent to the resolution of the claim. Furthermore, detailed review of the record supports the MSPB's decision. Disclosures to the wrongdoer herself are not whistleblowing, and the actions taken by Colonel Burke regarding Dr. Vahey occurred before any disclosures to him. For these reasons, the district court's opinion is

*AFFIRMED.*