**Margaret MULLINS, Plaintiff,**

v.

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY, et al., Defendants.**

**Case No. 1:03–cv–69–A (GBL).**

United States District Court,
E.D. Virginia,
Alexandria Division.

July 21, 2010.

Patricia A. Smith, Law Offices of Patricia A. Smith, Alexandria, VA, for Plaintiff.

Robert Barnes Delano, Jr., Sands Anderson PC, Richmond, VA, for Defendants.

## MEMORANDUM ORDER

GERALD BRUCE LEE, District Judge.

THIS MATTER is before the Court on Plaintiff Margaret Mullins's Renewed Motion for Summary Judgment on Count I (Dkt. No. 130). This case concerns Plaintiff's claim that Defendant Connecticut General Life Insurance Company ("CGLIC") improperly denied her claim for long term disability ("LTD") benefits as claims administrator of her employee disability plan. After ample opportunity for briefing and argument, the issue before the Court on remand remains whether CGLIC abused its discretion in denying Plaintiff's LTD benefits claim. The Court denies Plaintiff's Renewed Motion for Summary Judgment and reaffirms its ruling in favor of CGLIC because CGLIC reasonably determined Plaintiff was not entitled to LTD benefits under the Plan.

## I. BACKGROUND

Defendant AT & T Corporation ("AT & T") employed Plaintiff as a Communications Assistant. Plaintiff participated in AT & T's Long Term Disability Plan for Occupational Employees (the "Plan"), an employee welfare plan funded by Defendant AT & T. The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461 (West 1999 & Supp.2008). The Financial and Service Agreement (the "Agreement") entered into by CGLIC, AT & T, and Lucent Technologies, Inc., sets forth CGLIC's responsibilities as claims administrator of the Plan.

The Plan provides that the:

Claims Administrator shall serve as the final review committee under the Plan and shall have sole and complete discretionary authority to determine conclusively for all parties ... any and all questions arising from administration of the Plan and interpretation of all Plan provisions, determination of all questions relating to participation ... and eligibility for benefits, determination of all relevant facts, the amount and type of benefits payable ... and construction of all terms of the Plan.

(Plan § M.) An employee is entitled to receive LTD benefits under the Plan when, "in the sole opinion of the Claims Administrator, the ... [e]mployee is determined to be incapable of performing the requirements of any job for any employer ... for which the individual is qualified or may reasonably become qualified by training, education, or experience...." (Plan § B(6).) The Plan further requires that the claims administrator use ERISA-compliant appeals procedures. (Plan § M.)

CGLIC has a manual (the "Claims Manual"), known at one time as "The Book of Operating Knowledge," which sets forth procedures for case managers in processing claims for long term disability benefits. The Introduction section of the Claims Manual states that its purpose is "[t]o provide a referenced guide to Managed Disability Claims Management Policies and Procedures." (Def.'s Opp'n Renewed Mot. Summ. J. Ex. 4 at A00004.) The specific Claims Manual Bulletins at issue are discussed in detail in Section C of the Analysis, below.

In April 1998, physicians diagnosed Plaintiff with carpal tunnel syndrome. Plaintiff is also diabetic and physicians believed her diabetic condition worsened her carpal tunnel. In late 1998 and early 1999, Plaintiff underwent two unsuccessful surgeries for her condition. In April 1999, Plaintiff's physicians found her totally disabled from her position as a Communications Assistant. In September 1999, Plaintiff applied for LTD benefits under the Plan. On January 27, 2000, CGLIC denied Plaintiff's Claim for LTD benefits (AR at 159–62) and, after a review, sent Plaintiff a letter dated November 27, 2000, upholding the original denial of benefits (AR at 518–25). On May 7, 2002, Plaintiff again sought reconsideration of CGLIC's decision. CGLIC forwarded Plaintiff's file to its appeals team. After review by the appeals team, on January 9, 2003, CGLIC again denied benefits. (AR 642–43.) Plaintiff then sought review by this Court of CGLIC's determination.

The procedural history of this case is quite lengthy. On January 23, 2003, Plaintiff filed a Complaint in this Court against Defendants for improper denial of disability benefits under the Plan. On June 20, 2003, Plaintiff filed an Amended Complaint and on September 8, 2003, the parties filed cross Motions for Summary Judgment. On August 4, 2004, the Court granted CGLIC's Motion for Summary Judgment on Count I, wrongful denial of claim for LTD benefits, and denied Plaintiff's Motion on Count I because the Court found that CGLIC did not abuse its discretion in determining Plaintiff was capable of performing sedentary work and was therefore not disabled from any job with any employer.

Plaintiff appealed to the Fourth Circuit, arguing that this Court erred in denying her discovery requests because, without access to the information and processes CGLIC used to resolve disability claims, she could not demonstrate that the materials considered by CGLIC were inadequate or challenge the quality of CGLIC's decisionmaking process. On April 24, 2006, the Fourth Circuit issued a one page order remanding the case without opinion on the merits, instructing this Court to: 1) ascer-

tain the existence of any claims processing documents; 2) examine those documents; 3) provide Plaintiff any such documents relevant to her LTD benefits claim; and 4) allow the parties an opportunity to address the issue of Plaintiff's disability.

On August 14, 2006, this Court ordered CGLIC to produce numerous versions of its Claims Manual and other claims processing documents for the Court's *in camera* review. On February 28, 2007, after reviewing the documents, the Court affirmed summary judgment in favor of CGLIC, finding that CGLIC did not abuse its discretion in denying Plaintiff's LTD benefits claim because: 1) the weight of medical authority indicated that Plaintiff was capable of performing some level of work; 2) the Functional Capacity Examination ("FCE") remarks were reasonably considered in conjunction with the exam results as a whole and indicated that sedentary work was suitable for Plaintiff; and 3) mention of Plaintiff's potential mental condition did not show bias against Plaintiff in considering her claim.

Plaintiff again appealed, arguing that this Court failed to comply with the mandate of the Fourth Circuit's remand order because Plaintiff was not permitted to review the relevant portions of the claims processing documents or to make arguments about the significance of those documents to her claim for disability benefits. On September 3, 2008, the Fourth Circuit again remanded the case with instructions that this Court provide Plaintiff with all claims processing documents relevant to her claim for long term disability benefits and allow Plaintiff reasonable time to review the documents and present argument as to how the documents support her contention that CGLIC improperly denied her claim.

On November 7, 2008, this Court ordered CGLIC to produce to Plaintiff *all* claims processing documents originally produced to this Court in response to its August 14, 2006, Order. Plaintiff now renews her Motion for Summary Judgment on Count I, arguing that CGLIC's failure to follow its claims processing procedures constitutes an abuse of discretion. Pursuant to the Fourth Circuit's instructions on remand, this Court now considers Plaintiff's arguments and determines whether this Court should reaffirm summary judgment in favor of CGLIC or whether it should in some way modify its prior decision.

## II. STANDARD OF REVIEW

### A. *Motion for Summary Judgment*

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. A "material fact" is a fact that might affect the outcome of a party's case. *Id.* at 248, 106 S.Ct. 2505; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465

(4th Cir.2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Hooven–Lewis v. Caldera,* 249 F.3d 259, 265 (4th Cir.2001). A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. Denial of ERISA Benefits

■ The first step in determining the validity of a decision denying ERISA benefits is to examine the language of the plan to determine whether the provision of benefits is prescriptive or discretionary. See *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). When a plan "by its terms confers discretion on a fiduciary and the fiduciary acts within the scope of conferred discretion" a court examines the circumstances in a plaintiff's case for abuse of discretion. See *Booth v. Wal–Mart Stores, Inc.,* 201 F.3d 335, 341 (4th Cir.2000). Abuse of discretion is determined by examining the reasonableness of the administrator's actions within the scope of authority conferred by the terms of the plan. *Firestone,* 489 U.S. at 101, 109 S.Ct. 948. District courts should consider various criteria to determine the reasonableness of an administrator's actions, including:

1) the language of the plan;
2) the purposes and goals of the plan;

3) the adequacy of the materials considered to make the decision and the degree to which they support it;

4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan;

5) whether the decisionmaking process was reasoned and principled;

6) whether the decision was consistent with the procedural and substantive requirements of ERISA;

7) any external standard relevant to the exercise of discretion; and

8) the fiduciary's motives and any conflict of interest it may have.

*Booth,* 201 F.3d at 342–43. The list is not exhaustive. *Id.* A court leaves the fiduciary's decision undisturbed if reasonable. *Id.*

### III. ANALYSIS

The Court denies Plaintiff's Renewed Motion for Summary Judgment and reaffirms summary judgment in favor of CGLIC because Plaintiff fails to prove through documentary evidence that CGLIC abused its discretion by failing to find her "incapable of performing the requirements of any job for any employer." The parties do not dispute CGLIC's discretionary authority in administering the Plan or that the Court is to review CGLIC's determination for an abuse of discretion. Thus, the Court considers on remand Plaintiff's arguments as to how the claims processing documents reveal an abuse of discretion in denying Plaintiff's claim for benefits. Plaintiff's fundamental argument is that, as a whole, CGLIC's failure to follow its stated claims processing procedures was an abuse of discretion. The Court first analyzes whether CGLIC had any obligation to comply the procedures set forth in its claims processing documents; then, to the extent that an

obligation exists, the level of compliance necessary to avoid an abuse of discretion; and finally whether Plaintiff provides sufficient documentary support for her argument that CGLIC improperly denied her claim for benefits.

### A. Obligation to Adhere to Claims Processing Procedures

 As an initial matter, the Court finds that CGLIC had, to some extent, an obligation to process Plaintiff's claim for disability benefits in accordance with the procedures set forth in its claims processing documents. In evaluating the reasonableness of an administrator's decision, a court will consider, among other things, "the adequacy of the materials considered to make the decision and the degree to which they support it"; "whether the decisionmaking process was reasoned and principled" and "any external standard relevant to the exercise of discretion." *Booth*, 201 F.3d at 342–43 (4th Cir.2000). As one court noted, a fiduciary's internal guidelines are

> analogous to an administrative agency's guidelines or regulations which are routinely considered in evaluating whether the agency's actions were arbitrary or capricious. The documents here shed light on the "legal" rule the Plan applies, not the underlying facts presented to the Administrator.

*Glista v. Unum Life Ins.*, 378 F.3d 113 (1st Cir.2004). As such, an administrator's failure to follow its own procedures may constitute an abuse of discretion. *See Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 832 (5th Cir.1996) (abuse of discretion where reviewer's analysis of claim conflicted directly with stated evaluation criteria); *Egert v. Conn. Gen.*

*Life Ins. Co.*, 900 F.2d 1032, 1036–38 (7th Cir.1990) (denial of benefits was arbitrary and capricious where basis for denial conflicted with internal claims manual).

Here, CGLIC argues that it had no legally binding obligation to comply with the procedures set forth in its Claims Manual because the Claims Manual is merely a reference guide; it does not establish required procedures. The Court rejects this argument because compliance is relevant to the reasonableness of CGLIC's decision. CGLIC developed its Claims Manual to facilitate claims determinations; thus, the Claims Manual establishes a baseline as to what CGLIC considers an acceptable approach to analyzing claims. As such, while a strict application of its written claims processing procedures in reaching determinations under the Plan would favor a finding that CGLIC engaged in a reasoned and principled decisionmaking process, a complete derogation from its claims processing procedures would suggest unreasonableness. Thus, the Court finds that some level of compliance necessary; the Court addresses the level of compliance required below.

### B. Level of Compliance Required

 The Court finds that strict compliance with the claims processing procedures was not required; substantial compliance with the procedures would enable CGLIC to make a reasonable determination.[1] As to ERISA statutory law and its applicable regulations, "[s]ubstantial compliance with the spirit of the regulation will suffice, for '[n]ot all procedural defects will invalidate a plan administrator's decision.'" *Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 235 (4th Cir.1997) (quoting *Bro-*

---

1. In fact, it appears to the Court that something less than substantial compliance may be sufficient where the *Booth* factors as a whole weigh in favor of reasonableness. However, CGLIC makes an argument only as to the sufficiency of substantial compliance; therefore, the Court limits its analysis to that question.

*gan v. Holland,* 105 F.3d 158, 165 (4th Cir.1997)). In considering whether an administrator has substantially complied with ERISA and its governing regulations, a court's focus is on whether the compliance is such that it "substantially fulfills the[ ] goals" of the applicable regulation. *See Ellis,* 126 F.3d at 237 (substantial compliance with applicable regulations where compliance fulfilled goals of full and fair review by administrator, enabled plaintiff to prepare an appeal, and allowed the court to review a claim denial); *see also Brogan,* 105 F.3d at 164–66 (substantial compliance with regulation's notice requirements where administrator sent a deficient denial letter but thoroughly explained later in a conference with claimant the reasons why claimant's application had been denied).

Here, Plaintiff argues that the doctrine of substantial compliance does not apply because the caselaw cited by CGLIC applied the doctrine to the ERISA regulations' notice requirements, which are not at issue in this case. As such, Plaintiff implicitly argues that CGLIC was required to strictly comply with its claims processing procedures. The Court rejects Plaintiff's argument for two reasons.

First, the Court's focus is on the reasonableness of CGLIC's overall determination; compliance with the established procedures is relevant only to the extent that it weighs in favor of or against reasonableness. As noted in *Ellis* and *Brogan,* the compliance inquiry does not stop at whether the precise letter of the regulation is followed, but goes on to consider, in the absence of strict compliance, whether the spirit of the regulation is substantially fulfilled. See *Ellis,* 126 F.3d at 237; *Brogan,* 105 F.3d at 164–66. CGLIC's compliance with its internal procedures is properly addressed in a similar fashion. As the factfinder, CGLIC had a responsibility to evaluate Plaintiff's claim based on the facts of her case and make a determination under the Plan. The Court is not concerned with whether CGLIC strictly adhered to its internal procedures, but whether any deviation from those procedures suggests unreasonableness. As mentioned above, a complete departure from established internal procedures would suggest that CGLIC's decision was unreasonable under *Booth.* However, nothing prevents CGLIC's decision from being reasonable where partial deviations from its own procedures were justified and supported by facts in the record and requirements under the Plan.

Second, requiring strict compliance of CGLIC would rob CGLIC of its discretionary powers in administering the Plan. A court looks only for an abuse of discretion "where the benefit plan grants the administrator or fiduciary discretionary authority to determine eligibility or construe the terms of the plan." *Brogan,* 105 F.3d at 161. Here, CGLIC's discretionary authority is broad, as the Plan provides that

[CGLIC] shall serve as the final review committee under the Plan and shall have sole and complete discretionary authority to determine conclusively for all parties ... any and all questions arising from administration of the Plan and interpretation of all Plan provisions, determination of all questions relating to participation ... and eligibility for benefits, determination of all relevant facts, the amount and type of benefits payable ... and construction of all terms of the Plan.

(Plan § M.) Given this broad grant of authority, it is quite plausible that CGLIC would encounter claims either more complicated than claims anticipated by the Claims Manual or that require additional procedures not set forth in the claims processing documents. The Court finds it improper to require CGLIC's strict compliance with procedures that may interfere

with its ability to perform its discretionary function in accordance with the Plan documents.

### C. Documentary Support for Plaintiff's Argument

Turning now to Plaintiff's arguments as to how the claims processing documents support her contention that CGLIC improperly denied her claim for benefits, the Court finds CGLIC's decision reasonable for the reasons previously stated in the Court's February 28, 2007, and August 4, 2004, Memorandum Orders, and because none of Plaintiff's arguments here prove an abuse of discretion. On remand, the Fourth Circuit instructed this Court to consider arguments "as to how the documents support [Plaintiff's] contention that [CGLIC] improperly denied her claim for long-term disability benefits" and either reaffirm summary judgment in favor of CGLIC or "make any changes it deems necessary to its prior decision." *Mullins v. AT & T Corp.*, 290 Fed.Appx. 642, 647 (4th Cir.2008).

Plaintiff makes three arguments as to how CGLIC's failure to follow certain procedures resulted in the improper denial of LTD benefits. First, Plaintiff argues that, because the Plan contains no definition of "attending physician," CGLIC should have applied the plain meaning of the term and thus treated only the medical opinions of Drs. Strang, Ratliffe, and Schroering as those of attending physicians. Second, Plaintiff argues that CGLIC failed to properly follow any of the procedural steps outlined in the Claims Manual Bulletin entitled "Resolution of Conflicting Medical

Information." Third, Plaintiff argues that CGLIC failed to comply with the Claims Manual Bulletin entitled "HealthSouth IME/FCE Referral" because no attempts were made to clarify conflicting medical information with Plaintiff's attending physicians and no medical records were sent to the FCE examiner for review. The Court finds that CGLIC complied or substantially complied with its claims processing procedures in a reasonable manner and therefore rejects each of Plaintiff's arguments in turn below.[2]

#### 1. "attending physician"

■ The Court rejects Plaintiff's argument that CGLIC improperly considered the medical opinions of other than Plaintiff's "attending physicians" because the plain meaning is not limited strictly to Plaintiff's primary physicians as Plaintiff suggests. Under the terms of the Agreement, CGLIC was required to "arrange to obtain all relevant information from the Claimant's Attending Physician(s) and from such other persons or agencies as shall be necessary or appropriate to enable [CGLIC] to review fully and fairly the Claim." (Agreement ¶ 5.1.1.) According to the Claims Manual, where the medical consultant or case manager "disagrees with the Attending Physician's conclusion of the claimant's functionality," a series of steps are required to resolve the conflict. (Claims Manual, 10/22/99 revision, at CM 98002–2.) Plaintiff argues that any definition of "attending physician" found in the Agreement[3] is irrelevant to a construction of the term under the Claims Manual be-

---

**2.** Plaintiff also argues that the FCE, TSA, and LMS results were unreliable because the test results were predicated on unreliable medical information. Plaintiff previously raised challenges to the validity of these results which this Court rejected and fails presently to point to any documentary support for her argument. Thus, the Court need not address this

argument because it finds the argument to be outside the scope of the remand order.

**3.** The Agreement defines "attending physician" as a "duly licensed physician, psychiatrist, or psychologist treating the Claimant or Covered Person." (Agreement ¶ 1.4.)

cause the Claims Manual applies universally to many policies and the Agreement itself was not a part of the administrative record. Thus, Plaintiff argues that the Court must resort to the plain meaning of "attending physician" because the term is not defined in the Claims Manual. According to Plaintiff, the plain meaning of "attending physician" is "being the principal supervising physician." (Pl.'s Reply 2 (citing AMERICAN HERITAGE COLLEGE DICTIONARY 92 (4th ed.2004)).) Therefore, Plaintiff argues that CGLIC abused its discretion by improperly considering the medical opinions of Drs. Williams and Atasoy as if they were her principal physicians.

Accepting without deciding that the plain meaning should apply, the Court rejects Plaintiff's proposed definition of "attending physician" as too narrow. Many dictionaries define "attending physician" generally as a physician who has completed his residency and practices medicine in a clinic or hospital. See AMERICAN HERITAGE MEDICAL DICTIONARY 73 (rev. ed.2007) (defining "attending physician" as "a person who, as a member of a hospital staff, admits and treats patients and may supervise or teach house staff, fellows, and students"); MERRIAM-WEBSTER MEDICAL DESK DICTIONARY 65 (rev. ed.2005) (defining "attending" as "serving as a physician or surgeon on the staff of a hospital, regularly visiting and treating patients, and often supervising students, fellows, and the house staff"). Furthermore, even dictionaries limiting "attending physician" as Plaintiff proposes often do so as to situations where the physician is treating an inpatient at a hospital or other medical facility. See STEDMAN'S MEDICAL DICTIONARY FOR THE HEALTH PROFESSIONS AND NURSING 148 (6th illus. ed. 2008) (defining "attending physician" as "the physician formally and legally responsible for primary care and treatment *throughout stay in a health care facility*" (emphasis added)). Nothing in Plaintiff's briefs suggests

to the Court why the plain meaning she proposes is more appropriate than any of the definitions mentioned above. The Court finds that "attending physician" is used in the Claims Manual not to distinguish the primary physician from other treating physicians, but to delineate those physicians who have actually treated a claimant from those who have not. Thus, the Court applies the generalized definition of "attending physician" as its plain meaning.

Here, the Court finds that CGLIC did not abuse its discretion in considering Dr. Williams's medical opinion as that of an attending physician. When asked to list "all physicians who have treated you for your disability since your last day worked" Plaintiff listed, among others, Drs. Ratliffe, Strang, Schroering, *and* Dr. Williams. (AR 9.) Furthermore, the record indicates that Plaintiff visited Dr. Williams on at least two occasions prior to Dr. Williams's completion of the Physical Abilities Assessment on Plaintiff, once for a nerve conduction study on May 13, 1998 (AR 94–96, 260) and again at Dr. Strang's request on September 23, 1999 (AR 95–96). Dr. Williams treated Plaintiff and thus it was reasonable for CGLIC to consider his opinion to be that of an attending physician.

### 2. "Resolution of Conflicting Medical Information"

The Court likewise rejects Plaintiff's arguments that procedural irregularities as to how CGLIC decided her claim indicate an abuse of discretion. The Claims Manual Bulletin entitled "Resolution of Conflicting Medical Information" "provides specific, preferred steps to follow in claims investigations when the medical information provided raises conflict as to the claimant's limitations and abilities." (Claims Manual, 10/22/99 revision, at CM

98002–1.) According to the Release, "[w]hen the Medical Consultant or Case Manager disagrees with the Attending Physician's conclusion of the claimant's functionality, limitation and ability, the following steps, in order of preference, must be taken:"

- Medical Consultant calls the Attending Physician to reach consensus on functionality. . . .
- Medical Consultant refers file to Physician Advisor who attempts to reach consensus with the Attending Physician.
- Peer review, with Attending Physician contact. . . .
- On site nurse or voc visit . . . if appropriate . . .
- [Independent Medical Evaluation or] IME.

(Claims Manual, 10/22/99 revision, at CM 98002–2.) It further states that, "[r]ationale for any deviation from the preceding progression must be explained in writing in the claim file." (Claims Manual, 10/22/99 revision, CM 98002.)

Plaintiff argues that CGLIC initially erred by improperly considering the medical opinions of Drs. Williams and Atasoy as if they were attending physicians and then failed to comply with any of the steps for "Resolution of Conflicting Medical Information." Plaintiff also argues that CGLIC failed to conduct an IME or peer review. The Court rejects these arguments in turn.

First, as mentioned above, "attending physician" is not limited to Plaintiff's primary physicians. As such, the case manager properly contacted Plaintiff's various physicians for opinions on functionality. (AR at 46–47; 76–80; 101–02.)

■ Second, CGLIC substantially complied with the procedures set forth in the Claims Manual. CGLIC obtained Plaintiff's medical records, contacted the physicians listed by plaintiff in her claim paperwork, and requested Physical Ability Assessments from Drs. Strang and Williams. The claims manager and medical consultant considered the inconsistent opinions of Drs. Strang and Williams and forwarded Plaintiff's claim to Dr. Franz for review. (AR 151–52, 113.) Dr. Franz found that the file lacked medical evidence to define Plaintiff's functionality. (AR 163–64.) CGLIC found, in writing, that a peer review was unnecessary due to the conflicting medical opinions and the lack of evidence supporting Plaintiff's LTD claim. (AR 655, 661.) Thus, CGLIC substantially complied with the procedures set forth in the "Resolution of Conflicting Medical Information" Bulletin.

The fundamental problem with Plaintiff's argument is that she is only entitled to LTD benefits under the Plan if she is "incapable of performing the requirements of any job for any employer" for which she is qualified or could become reasonably qualified. (Plan § B(6).) When asked during the May 10, 2010, hearing whether the Court's options were limited to either reaffirming summary judgment in favor of CGLIC or granting Plaintiff's Renewed Motion for Summary Judgment, Plaintiff answered yes. However, even if the Court were to accept Plaintiff's argument that only Drs. Strang, Ratliffe, and Schroering were attending physicians and that CGLIC therefore should have resolved with them any conflicts regarding functionality, the facts do not conclusively show that Plaintiff is entitled to benefits under the Plan. In his Physical Ability Assessment, Dr. Strang stated that Plaintiff was unable to work, without specifying whether the inability to work extended to "any job for any employer" as required under the Plan. (AR 48.) In his Physical Ability Assessment, he found, among other things, that Plaintiff could sit, stand, and walk up to seven to eight hours during a standard eight-hour workday and could occasionally reach

above and below her shoulders. (AR 46–47, 651.) Furthermore, although Dr. Schroering was of the opinion that Plaintiff was unable to return "to her regular work and duties" and "to her customary work as an AT & T operator," (AR 272–74) this does not necessarily mean that Plaintiff is incapable of performing "any job for any employer" as required to receive benefits under the Plan.

### 3. "HealthSouth IME/FCE Referral"

The Court likewise rejects Plaintiff's arguments as to the "HealthSouth IME/FCE Referral" Bulletin because HealthSouth did not conduct Plaintiff's FCE and therefore that portion of the Claims Manual is inapplicable. The "HealthSouth IME/FCE Referral" Bulletin "highlights the assessment tool of the Combination IME/ARCON FCE evaluation offered by HealthSouth." (Claims Manual, May 14, 1999 version, at CM 99019–1.) Here, Plaintiff argues that CGLIC failed to clarify conflicting medical information with Plaintiff's attending physicians and failed to send her medical records to the FCE examiner for review as required under the procedures set forth in the Bulletin. The Court rejects this argument because HealthSouth did not conduct Plaintiff's FCE since it did not have a facility closer than 150 miles from Plaintiff's home. As such, a different vendor conducted Plaintiff's FCE. Hence, a Bulletin that, by its very terms, applies to HealthSouth FCEs would not apply to FCEs by other vendors.

### IV. CONCLUSION

The Court denies Plaintiff's Renewed Motion for Summary Judgment because Plaintiff fails to prove that CGLIC abused its discretion when it denied her LTD benefits claim. The Court finds that CGLIC reasonably considered the medical opinions of Plaintiff's "attending physicians." The Court also finds that CGLIC substantially complied with its policies regarding the resolution of conflicting medical information and engaged in a reasoned, principled process in making its determination. Finally, the Court finds the HealthSouth Bulletin inapplicable to Plaintiff's claim. Accordingly, it is hereby

ORDERED that Plaintiff's Renewed Motion for Summary Judgment on Count I is DENIED. The Court REAFFIRMS summary judgment in favor of Defendant Connecticut General Life Insurance Company.