**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1184**

TONI C. WORKS,

       Plaintiff - Appellant,

    v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration,

       Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, District Judge. (1:10−cv−01284−RDB)

Argued: March 22, 2017                        Decided: April 26, 2017

Before TRAXLER, KEENAN, and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Stephanie Marie Herrera, LAW OFFICES OF GARY M. GILBERT & ASSOCIATES, P.C., Silver Spring, Maryland, for Appellant. Jason Daniel Medinger, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Gary M. Gilbert, Cori M. Cohen, LAW OFFICES OF GARY M. GILBERT & ASSOCIATES, P.C., Silver Spring, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Toni Works appeals from the district court's award of summary judgment in favor of her former employer, the Social Security Administration (SSA), in her action for discrimination filed under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* After the SSA terminated Works' employment from a probationary program for disabled persons attempting to re-enter the workforce, Works claimed that the SSA (1) unlawfully discriminated against her based on her disability; (2) denied her requests for reasonable accommodations for her disability; and (3) retaliated against her because she engaged in the protected activity of taking disability-related leave. For the reasons that follow, we affirm the district court's summary judgment award.

I.

While serving in the United States Navy as an aircraft electrician in 1985, Works was involved in an accident that caused her to suffer a seizure disorder. After working in a hospital for a few years, Works was unemployed for about ten years. She ultimately qualified for, and began receiving, disability benefits from both the SSA and the Department of Veterans Affairs.

On August 26, 2002, the SSA hired Works as a probationary employee in a program designed for disabled individuals. The program offered employees a one-year trial period in which to demonstrate that they could perform their assigned job functions and be retained on a permanent basis. Works' position as a "management assistant" in the employee development and training branch (EDTB) required her to maintain and

3

compile data, make calculations regarding staff hours and workload, provide charts of data collected, and assist with other duties as assigned. Marjorie Warner, EDTB manager, served as Works' supervisor, while William Johnson-Bey and Janet Edrington served as EDTB deputy managers.

Several different "team leaders" assigned Works projects to complete. Within the first 90 days of Works' probationary employment, Johnson-Bey and one team leader advised Warner that Works had difficulty completing assignments. This team leader informed Warner that Works frequently was away from her work station and "spent a lot of time on the phone" discussing matters that "were personal in nature." However, another team leader stated that Works "did not socialize at the workplace any more than other employees." Nevertheless, by December 2002, Works was aware that her supervisors were "unhappy with her work."

Works suffered a seizure at home in January 2003, and a seizure at work in February 2003. These seizures likely were caused by a new medication that Works had been prescribed.

Works took several days of leave related to these seizures. Warner approved all of Works' requests for leave, and granted her advanced sick leave when necessary. To facilitate Works' safe return to work in February 2003, Warner and Johnson-Bey arranged for a nurse to teach staff members how to aid Works in the event that she suffered another seizure in the workplace.

In March 2003, Warner along with Johnson-Bey and two team leaders, participated in a mid-year performance review with Works. Warner deemed Works'

4

performance as "basically satisfactory, though not exceptional." The review included reports that Works had difficulty understanding a data entry project assigned by Johnson-Bey, that she needed excessive amounts of direction, and that the project eventually was completed by a co-worker. That co-worker, however, testified that Works was "diligent" and had "applied herself."

In describing Works' performance, Johnson-Bey stated that Works' performance on some assignments was "really pretty good," including when Works oversaw employees who participated in video training. Yet, Johnson-Bey also stated that "most of [Works' performance problems] were involving working those different database systems . . . those kinds of things that we originally had hired her for." Another team leader testified that Works' performance generally was satisfactory, and that Works' performance was "right on point when her medication was at the right level."

Works continued to suffer seizures, including one at work in May 2003, and one at home in June 2003. During her probationary period, Works used about 326 hours of leave, including both disability-related and unrelated leave.

On June 23, 2003, Warner completed a progress review memorandum assessing Works' performance. In that memorandum, Warner stated that Works had been "extremely resistant" to performing two hours per day of typing work, which was required for all employees in Works' position. Warner also related that Works was "frequently absent, unaware of her leave balances," and had trouble following proper procedures for requesting and using leave.

5

Warner further noted that Works often engaged in personal conversations at work, and had been observed sleeping during meetings. Warner ultimately concluded in her assessment that Works' performance and conduct had "considerably deteriorated since the last performance discussion and immediate and substantial improvement is needed."

Works suffered another seizure at home on July 14, 2003. Four days later, on July 18, 2003, after Works had returned from three days of leave, Works asked Warner if she would be retained at the end of her probationary period. Warner said that if she had to make a decision that day, Works would not be retained.

One week later, on July 25, 2003, Works was given notice of termination effective August 8, 2003. The notice stated that the basis for the termination was Works' "repeated failure to complete assignments as expected," which could "largely be attributed to" the "excessive amount of time that [she had] been seen away from [her] workstation, socializing with others, aimlessly walking the halls and spending an inordinate amount of time on the telephone for personal reasons." The notice also explained that the SSA requires "continuous work processing," and that it "is essential that our employees report to work regularly and perform their duties. Your actions are unacceptable because when you have been out on unscheduled leave, management cannot depend on you being available to accept and perform the assignments expected."

Works later filed a discrimination claim with the Equal Employment Opportunity Commission, which was resolved in favor of the SSA. Thereafter, Works filed a complaint against the SSA in the district court alleging violations of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* Works alleged that: (1) the SSA's termination of her

6

employment constituted unlawful discrimination based on her disability; (2) the SSA denied her requests for reasonable accommodations for her disability; and (3) the SSA unlawfully retaliated against her based on her protected conduct, namely, taking disability-related leave. After the close of discovery, the SSA filed a motion for summary judgment, which the district court granted.[1]

The district court concluded that Works had failed to meet her prima facie burden of proof on her claims of disability discrimination and failure to grant reasonable accommodations. The court held that because of Works' excessive absenteeism, she was unable to demonstrate that she could perform the essential functions of the position. Thus, the court concluded that Works had failed to show that she was a "qualified individual" within the meaning of the Act.

Additionally, addressing Works' retaliation claim, the district court held that although Works could establish a prima facie case, she failed to rebut as pretextual the SSA's proffered, non-discriminatory reasons for her termination, namely, her failure to complete assignments as expected and her frequent unscheduled leave. After the district court denied Works' motion for reconsideration, she filed the present appeal.

---

[1] Initially, the district court granted the SSA's motion for summary judgment without addressing Works' request for discovery. On appeal to this Court, we vacated the district court's judgment and remanded the case to the district court with instructions to grant Works' discovery request. *Works v. Colvin*, 519 F. App'x 176, 176 (4th Cir. 2013) (unpublished).

7

II.

A.

We review the district court's award of summary judgment de novo. *Turner v. United States*, 736 F.3d 274, 280 (4th Cir. 2013). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We construe the evidence in the light most favorable to Works, and draw all reasonable inferences in her favor. *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 150 (4th Cir. 2012).

We begin with a brief overview of the Rehabilitation Act (the Act), 29 U.S.C. § 701 *et seq.*, which imposes on federal agencies an affirmative duty concerning the treatment of disabled applicants and employees.[2] 29 U.S.C. § 791(b). The Act provides that "no otherwise *qualified* individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . . ." *Id.* § 794(a) (emphasis added). Accordingly, to establish a prima facie case of discrimination or failure to accommodate under the Act, Works was required to show that she was a disabled individual who was qualified for the position. *Reynolds v. Am. Nat'l Red Cross*,

---

[2] "Employment discrimination claims brought under [the Rehabilitation Act] are evaluated using the same standards as those applied under Title I of the Americans with Disabilities Act of 1990." *Reyazuddin v. Montgomery County*, 789 F.3d 407, 413 (4th Cir. 2015) (internal quotation marks and alterations omitted); *see Hooven-Lewis v. Caldera*, 249 F.3d 259, 268 (4th Cir. 2001).

701 F.3d 143, 150 (4th Cir. 2012); *Hooven-Lewis v. Caldera*, 249 F.3d 259, 268 (4th Cir. 2001).  The parties do not dispute, and we agree, that Works' seizure disorder rendered her "disabled" under the Act.

B.

Works argues on appeal that in dismissing her discrimination and failure to accommodate claims, the district court erroneously held that because of Works' excessive absenteeism, she was not a "qualified individual" who could perform the essential functions of her job.  According to Works, her presence in the office was not essential, because her duties "could be, and were, 'distributed' amongst her co-workers during her absence."  Works further argues that because the district court found that she presented some favorable evidence regarding the adequacy of her job performance, she necessarily was a "qualified individual" under the terms of the Act.  We disagree with Works' position.

A "qualified individual" is one "who, with or without a reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  *Reyazuddin v. Montgomery County*, 789 F.3d 407, 414 (4th Cir. 2015) (citing 42 U.S.C. § 12111(8)); *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 212-13 (4th Cir. 1994) (same).  To satisfy this requirement, an employee must "possess[] the skills necessary" for the position, but also must be "willing and able to demonstrate these skills by coming to work on a regular basis."  *Tyndall*, 31 F.3d at 213.  Unless an employee can complete her assignments from an alternate location, an

9

employee "who does not come to work cannot perform *any* of [her] job functions, essential or otherwise." *Id.* (citation omitted).

The record uniformly shows that as a management assistant, Works could not receive or perform assignments unless she was present in the office. Not only did the announcement advertising her management assistant position state that the work would be performed in an office setting, but Works admitted that her duties required her presence in the office. Further, the record supports the commonsense conclusion that an employee's absence from her work location and inability to perform her job functions will result in hardship to the group to which she has been assigned. Thus, Works' presence in the office was a necessary element of her job performance regardless whether another management assistant could perform a particular task in Works' absence.

In addition, although the district court concluded that Works presented some favorable evidence regarding the adequacy of her performance "when she was actually at work," Works needed to show more than her ability to perform her particular job functions. During the 50 weeks of probationary employment designed to show whether Works could return to work on a permanent basis, she missed more than seven weeks of work. Despite Warner's authorization of all Works' requests for disability-related and unrelated leave, Works' attendance record did not improve. Thus, even after taking substantial medical leave to accommodate her disability, Works was unable to reach a point at which she could regularly attend work and perform her assignments as a management assistant. *See Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345-46 (4th Cir.

10

2013) (employee failed to show that request of additional two days of leave would allow him to perform essential functions of job at conclusion of leave period).

Our conclusion that Works failed to establish that she is a "qualified individual" is not altered by Warner's statements that Warner could have "worked with" Works' absences, and that Works' absences were "a concern" but not a "major concern." These statements reflected Warner's willingness to afford Works necessary accommodations in the form of leave, and did not establish that Works' presence at work was non-essential or unimportant. Moreover, Warner consistently and repeatedly stated that her primary concern was Works' inability to complete assigned tasks. Works' failure to report to work on a reliable basis directly contributed to her inability to perform her job duties.

Because Works' excessive absenteeism rendered her unable to fulfill the essential functions of her job, we hold that she was not a "qualified individual with a disability," as required by the Act. *See Tyndall*, 31 F.3d at 212-14. We therefore affirm the district court's conclusion that Works failed to present a prima facie case of discrimination and failure to accommodate.

## C.

Finally, we turn to consider whether the district court erred in entering summary judgment in favor of the SSA with respect to Works' retaliation claim. Works alleges that the termination from her probationary position constituted unlawful retaliation because she engaged in the protected activity of taking disability-related leave. *See Hooven-Lewis*, 249 F.3d at 272-74. In response, the SSA asserts that Works has

11

abandoned any challenge to the district court's ruling on this claim because she failed to raise the issue in her opening brief filed in this Court. We agree with the SSA's position.

Under Rule 28 of the Federal Rules of Appellate Procedure, "the argument [section of the brief] . . . must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(8). We have explained that "[f]ailure to comply with the specific dictates of [Rule 28] with respect to a particular claim triggers abandonment of that claim on appeal." *Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999); *accord A Helping Hand, LLC v. Baltimore County*, 515 F.3d 356, 369 (4th Cir. 2008).

The arguments presented in Works' opening brief challenge the district court's rulings on her claims of disability discrimination and failure to accommodate. Although Works later addressed the retaliation claim in her reply brief and during oral argument before this Court, such treatment is insufficient under Rule 28 to preserve the issue for our review. Accordingly, we conclude that Works has abandoned any challenge to the district court's entry of summary judgment on Works' claim of retaliation.[3]

---

[3] Even if we determined that Works' challenge to the district court's ruling on retaliation properly were raised, we still would affirm the court's decision. For the reasons stated by the district court, Works cannot establish that the SSA's non-discriminatory reasons for terminating Works' probationary employment were pretextual.

## III.

For these reasons, we affirm the district court's award of summary judgment to the SSA.

*AFFIRMED*